UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

TIMOTHY LAUBACKER,

        Petitioner,

        v.

UNITED STATES OF AMERICA,

        Respondent.
_____

19-CV-255
16-CR-86
DECISION & ORDER

Timothy Laubacker has moved *pro se* to vacate his sentence under 28 U.S.C. § 2255.  No. 19-CV-255[1]; No. 16-CR-86, Docket Item 100.  For the reasons that follow, that motion is denied.

## BACKGROUND

On July 20, 2016, a grand jury charged Laubacker with nine counts of receiving, distributing, and producing child pornography; conspiring to do the same; and cyberstalking.  *See* Docket Item 1.  About a year later, on July 12, 2017, Laubacker waived indictment and pleaded guilty to two charges in a superseding information: (1) enticing a minor to engage in sexual activity, in violation of 18 U.S.C. § 2422(b); and (2) cyberstalking, in violation of 18 U.S.C. §§ 2261A(2)(B), 2261(b)(5).  *See* Docket Items 41, 46, 99.  The written plea agreement included a provision whereby Laubacker waived his rights to appeal or collaterally attack a sentence that fell within the United States Sentencing Guidelines ("Guidelines") range calculated in the plea agreement:

---

[1] Laubacker petitioned under this civil docket number to vacate his sentence.  All further citations are to the underlying criminal docket.

> The defendant understands that Title 18, United States Code, Section 3742 affords a defendant a limited right to appeal the sentence imposed. The defendant, however, knowingly waives the right to appeal and collaterally attack any component of a sentence imposed by the Court which falls within or is less than the sentencing range for imprisonment, a fine and supervised release set forth in Section III, ¶ 20, above, notwithstanding the manner in which the Court determines the sentence . . . . The defendant understands that by agreeing not to collaterally attack the sentence, the defendant is waiving the right to challenge the sentence in the event that in the future the defendant becomes aware of previously unknown facts or a change in the law which the defendant believes would justify a decrease in the defendant's sentence.

Docket Item 41 at 12. The Guidelines range calculated in the plea agreement included a term of imprisonment of 168 to 210 months. *Id.* at 10. Laubacker and his attorney signed that agreement on July 12, 2017. *See id.* at 16.

Before accepting Laubacker's plea, this Court ensured that he understood—and knowingly, intelligently, and voluntarily waived—his many rights. *See* Docket Item 99. First, Laubacker waived his right to be charged by an indictment:

> THE COURT: And . . . you have a constitutional right to be charged by an indictment issued by a grand jury. In fact, you previously were charged by an indictment issued by a grand jury, but the charges that I just described are brought not by an indictment, but by a superseding information that was filed by the United States Attorney. . . . So, Mr. Laubacker, you can waive your right to be charged by an indictment and consent to be charged only by an information, but if you don't waive your right to be charged by an indictment, you could not be charged with a felony unless and until a grand jury found by returning an indictment that there's probable cause to believe that a crime was committed and that you committed the crime; do you understand that?
>
> THE DEFENDANT: Yes, sir.
>
> . . .
>
> THE COURT: Do you understand your right to indictment?

THE DEFENDANT: Yes, sir.

THE COURT: Do you understand what it means to give up that right?

THE DEFENDANT: Yes, sir.

THE COURT: Have you and your lawyer discussed your right to indictment by the grand jury?

THE DEFENDANT: We have.

THE COURT: Has anyone made any promises, representations, or guarantees of any kind to get you to waive your right to an indictment?

THE DEFENDANT: No, sir.

THE COURT: Has anyone attempted in any way to threaten you, threaten your family, threaten anyone close to you, or force you in any way to give up your right to indictment?

THE DEFENDANT: No, sir.

THE COURT: Do you want to waive and give up your right to indictment by a grand jury?

THE DEFENDANT: I will.

THE COURT: And are you waiving and giving up your right to indictment by a grand jury voluntarily and of your own free will?

THE DEFENDANT: I am.

. . .

THE COURT: I have in front of me a signed waiver of indictment form dated July 12th, 2017.  Mr. Laubacker, is that your signature on the form?

THE DEFENDANT: It is.

THE COURT: Did you read and do you understand the waiver?

THE DEFENDANT: I have.

THE COURT: And do you understand it?

3

> THE DEFENDANT: Yes.
>
> THE COURT: Okay. Mr. Laubacker, do you waive and give up your right to indictment by a grand jury?
>
> THE DEFENDANT: Yes, sir.

*Id.* at 8-12.

The Court also explained that by pleading guilty, Laubacker would be giving up several other rights, including his rights to plead not guilty, to a speedy and public trial, to a presumption of innocence that could be overcome only by proving him guilty beyond a reasonable doubt, to be protected from compelled self-incrimination, to counsel throughout the process, and to an appeal. *Id.* at 14-15.

> THE COURT: Has your attorney advised you of all the rights that I've just gone over?
>
> THE DEFENDANT: Yes, sir.
>
> THE COURT: Do you understand all of them?
>
> THE DEFENDANT: Yes, sir.
>
> THE COURT: Do you have any questions about any of them?
>
> THE DEFENDANT: No, sir.
>
> THE COURT: Do you need more time to talk to your lawyer about them?
>
> THE DEFENDANT: I do not.
>
> THE COURT: Do you understand that if your plea is accepted, you'll be incriminating yourself and you'll have waived or given up your right to a trial and all the other rights that I just described?
>
> THE DEFENDANT: I understand.
>
> THE COURT: Do you still want to give up those rights?
>
> THE DEFENDANT: Yes, sir.

*Id.* at 16-17.

Additionally, Laubacker testified that he understood that he was waiving his right to appeal and to collaterally attack his conviction and sentence.

> THE COURT: Do you understand that by entering into this plea agreement and entering a plea of guilty, you are giving up your right to appeal or collaterally attack your conviction?
>
> THE DEFENDANT: I understand.
>
> THE COURT: Do you also understand that you're giving up your right to appeal or collaterally attack all or part of the Court's sentence as long as that sentence is within or less than the guidelines range that's noted in paragraph 20, and that means a term of imprisonment of up to 210 months, 17 years and six months—
>
> THE DEFENDANT: I understand.
>
> THE COURT: —a fine of up to $400,000, a period of supervised release up to life, and the required special assessment of $100 on each charge for a total of $200, and an additional special assessment of $5,000, for a total special assessment of $5,200; do you understand that?
>
> THE DEFENDANT: I understand.
>
> THE COURT: Do you understand that you're giving up your right to challenge your sentence if it's within or less than that range, even if in the future you learn facts that you don't know now that you think would justify a lesser sentence, and even if in the future the law changes in a way that you think would justify a lesser sentence?
>
> THE DEFENDANT: I understand.
>
> THE COURT: Did you discuss giving up your right to appeal with your lawyer.
>
> THE DEFENDANT: I did.
>
> THE COURT: Based on that discussion and having considered the issue, do you agree to give up your right to appeal on the terms and conditions that I just stated?

THE DEFENDANT: I do.

*Id.* at 52.

Laubacker also confirmed his signature on the plea agreement and that he was entering into the agreement knowingly, intelligently, and voluntarily.

| | |
|---|---|
| THE COURT: | Mr. Laubacker, is this your signature on page 16 of the agreement? |

THE DEFENDANT: It is.

| | |
|---|---|
| THE COURT: | Did you read the agreement that you signed and discuss it with your lawyer before you signed it? |

THE DEFENDANT: I have.

THE COURT: Do you understand all the terms of the agreement?

THE DEFENDANT: I do.

THE COURT: Do you want more time to talk to your lawyer about it?

THE DEFENDANT: No, sir.

. . .

THE COURT: Is anyone forcing you to plead guilty?

THE DEFENDANT: No, sir.

| | |
|---|---|
| THE COURT: | Whether you plead guilty is your decision, it's not your lawyer's decision.  You should do what you want to do, not what you think your lawyer wants you to do, not what you think I want you to do, not what you think anybody else in the world wants you to do, it's what you want to do.  Do you want to plead guilty? |

THE DEFENDANT: Yes, [y]our Honor.

| | |
|---|---|
| THE COURT: | And have you decided to plead guilty voluntarily and of your own free will? |

THE DEFENDANT: I have, and I will.

*Id.* at 18-19; *see also id.* at 21-22, 30.

Laubacker specifically testified that he understood each element of the charges to which he was pleading guilty and that the first count carried a mandatory minimum term of incarceration of ten years:

> THE COURT: Do you understand the nature of both charges?
>
> THE DEFENDANT: I do.
>
> THE COURT: Do you understand the elements of each charge?
>
> THE DEFENDANT: I do.
>
> THE COURT: Have you discussed the charges and their elements that I just described with your lawyer?
>
> THE DEFENDANT: I have.
>
> THE COURT: Do you have any questions about the charges or their elements?
>
> THE DEFENDANT: No, sir.
>
> THE COURT: Do you believe that if this case went to trial, the government would be able to prove beyond a reasonable doubt each of the essential elements of each crime to which you'd like to plead guilty?
>
> THE DEFENDANT: Yes.
>
> THE COURT: Have you been advised of the maximum penalties and the mandatory minimum penalties for the charges?
>
> THE DEFENDANT: I have.
>
> THE COURT: So if you turn back to page 1, paragraph 1 of the agreement, you'll see that for Count 1, the maximum possible sentence is a term of imprisonment of life, a fine of $250,000, a term of supervised release up to life, and a mandatory $100 special assessment that I'm required to impose. Do you understand the maximum penalties that can be imposed for Count 1?
>
> THE DEFENDANT: I do, Your Honor.

> THE COURT: Do you understand that for Count 1 there's also a mandatory minimum term of imprisonment of at least ten years?
>
> THE DEFENDANT: I do.
>
> THE COURT: And do you also understand that for Count 1, there's a mandatory term of supervised release of at least five years?
>
> THE DEFENDANT: I do.
>
> . . .
>
> THE COURT: Do you understand that the mandatory minimum term of imprisonment is ten years for Count 1, and that I'm required to sentence you to at least that much time?
>
> THE DEFENDANT: I understand.

*Id.* at 21-22, 30.

After the government explained the factual basis for each charge of the superseding information, Laubacker confirmed that he had committed the acts charged:

> THE COURT: Are you pleading guilty because you did the things that the plea agreement says you did and that are charged in Count 1 of the information?
>
> THE DEFENDANT: Yes, sir.
>
> . . .
>
> THE COURT: Are you pleading guilty because you did the things that the plea agreement says you did and that are charged in Count 2 of the information?
>
> THE DEFENDANT: I am.

*Id.* at 39, 43.

And Laubacker testified that he understood the Guidelines calculation, including that he would be sentenced as though he had been convicted of a more serious charge:

> THE COURT: Have you and your lawyer talked about how the sentencing guidelines might be applied in your case?

8

THE DEFENDANT: Yes, sir.

THE COURT: Has your lawyer explained how the various elements and factors might be used to determine the guidelines range for your sentence?

THE DEFENDANT: Yes, sir.

THE COURT: Do you understand that the conduct that will be used to compute your guidelines range will include not only the conduct to which you plead guilty, but also relevant conduct that may involve counts that are dismissed or that never were charged?

THE DEFENDANT: I understand.

THE COURT: So, for example, let's look at paragraph 8 of the plea agreement. Do you understand that you're specifically agreeing that your sentencing guidelines range would be determined as if you were convicted of a violation of 18, United States Code, Section 2251(a), enticement of a minor to engage in sexually explicit conduct for the purpose of producing child pornography?

THE DEFENDANT: I do.

THE COURT: And you're also agreeing that there will be a two-level increase in your guideline range because the victim was a vulnerable person; do you understand that?

THE DEFENDANT: Yes, sir.

. . .

THE COURT: Now, Mr. Laubacker, in paragraph[s] 10 to 20 of the plea agreement, you and the government are agreeing to sentencing guidelines calculations, and in paragraph 20 you're agreeing to an understanding about a specific guidelines range, specifically you and the government are agreeing that the guidelines would call for a sentence of between 168 months and 210 months of imprisonment, that means 14 years to 17 years and six months, plus a fine of between $40,000 and $400,000, plus a period of supervised release of at least five years and up to life, plus the special assessments of $100 on each count for a total of $200, and if you're not indigent an additional

>   special assessment of $5,000.  Do you understand all that?
>
> THE DEFENDANT: I do.
>
> . . .
>
> THE COURT: And do you understand that the Court must sentence you to a sentence that is at least the mandatory minimum penalties that we discussed earlier?
>
> THE DEFENDANT: I understand.
>
> THE COURT: Do you understand that you're not going to be able to withdraw your guilty plea based upon the sentence that the Court imposes?
>
> THE DEFENDANT: I do.

*Id.* at 45-46, 48, 49.

Finally, Laubacker testified that he was satisfied with the representation provided by his counsel:

> THE COURT: Mr. Laubacker, have you spoken to your attorney about the charges against you, about your rights, about the proposed plea agreement, and about your options?
>
> THE DEFENDANT: I have, Your Honor.
>
> THE COURT: Are you satisfied with the advice and counsel that you've received from him?
>
> THE DEFENDANT: Yes.

*Id.* at 8.  Laubacker later confirmed his lawyer's representations that they had thoroughly and completely reviewed the plea agreement, the evidence, and Laubacker's options:

> THE COURT: [Defense counsel], did you and your client both sign the agreement?
>
> [DEF. COUNSEL]: Yes, Your Honor.

10

THE COURT: Did you discuss all the contents of every section and every paragraph of the agreement with your client before he signed it?

[DEF. COUNSEL]: Yes.

. . .

THE COURT: Did you review the facts of the case and all the discovery provided by the government with your client?

[DEF. COUNSEL]: Yes.

THE COURT: Did you discuss with your client any potential defenses he might have?

[DEF. COUNSEL]: Yes.

THE COURT: And did you and your client agree that it was in his best interest to enter into this agreement?

[DEF. COUNSEL]: Yes.

. . .

THE COURT: Mr. Laubacker, are you satisfied with the representation your lawyer has provided you?

THE DEFENDANT: I am.

THE COURT: Have you told him everything you know about your case?

THE DEFENDANT: Yes, I have.

THE COURT: Do you believe he's fully considered any defense you may have to the charges?

THE DEFENDANT: Yes.

THE COURT: Do you believe he's fully advised you about the case?

THE DEFENDANT: Yes, sir.

THE COURT: Do you believe you've had enough time to talk to him about the case?

THE DEFENDANT: Yes, sir.

11

*Id.* at 54, 56.  The Court then accepted Laubacker's plea of guilty.

On February 21, 2018, this Court sentenced Laubacker to a term of imprisonment of 180 months on count one and to a concurrent term of 60 months on count two, for a total term of imprisonment of 180 months.  *See* Docket Items 82, 89, 97.  That sentence was within the Guidelines range contemplated in the plea agreement.  Docket Item 41 at 10; Docket Item 99 at 48.  Laubacker did not appeal his conviction or sentence.  *See* Docket Item 104 at 8.

On February 25, 2019, Laubacker moved to vacate his sentence under 28 U.S.C. § 2255.  Docket Item 100.  Laubacker argued, in sum and substance, that his counsel was ineffective in not moving to dismiss the superseding information on various grounds.  The government responded on May 3, 2019.  Docket Item 104.  Laubacker has not replied, and his time to do so now has expired.

## DISCUSSION

### A.     Section 2255

Laubacker seeks relief under 28 U.S.C. § 2255, which provides:

> A prisoner in custody under sentence of a court established by Act of Congress claiming the right to be released upon the ground that the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack, may move the court which imposed the sentence to vacate, set aside or correct the sentence.

28 U.S.C. § 2255(a).  A court may dismiss a section 2255 petition without first conducting a hearing if the petition and record "conclusively show" that the petitioner is not entitled to the relief he seeks.  *Id.* § 2255(b).

Laubacker argues that his counsel was ineffective in several ways: (A) not moving to suppress statements obtained in violation of Laubacker's Fifth Amendment rights; (B) not moving to dismiss the superseding information on grounds of post-accusation delay that violated Laubacker's Fifth Amendment due process rights; (C) not moving to suppress evidence seized in violation of Laubacker's Fourth Amendment rights; (D) not moving to dismiss the superseding information as multiplicitous; (E) not moving to withdraw Laubacker's guilty plea; (F) failing to investigate possible defenses, in violation of Laubacker's Sixth Amendment rights; (G)-(I) failing to inform Laubacker of the nature of the charges; (K) not objecting to the Pre-Sentence Investigation Report; and (L) not filing a requested direct appeal. Docket Item 100 at 16-37; 39-44. He also argues that the prosecutor withheld evidence favorable to the defense. *Id.* at 38. The government responds that Laubacker's motion is barred by the waiver in his plea agreement, and that, in any event, none of the alleged deficiencies prejudiced Laubacker. *See* No. Docket Item 104. For the reasons that follow, this Court agrees with the government.

### B.     Laubacker's Waiver

"A defendant's knowing and voluntary waiver of the right to appeal or collaterally attack his conviction and/or sentence is enforceable." *Sanford v. United States*, 841 F.3d 578, 580 (2d Cir. 2016). Thus, a defendant who has signed an appeal waiver typically is barred from arguing that his sentence was calculated improperly—so long as the plea was knowing and voluntary. This is true even if the law changes in a way that is favorable to the defendant. *See United States v. Harrison*, 699 F.3d 158, 159 (2d Cir. 2012) ("We have held that the 'cases foreclose the possibility that a plea agreement can

be nullified by a change in law *after* the agreement is executed:  A defendant's inability to foresee that subsequently decided cases would create new appeal issues does not supply a basis for failing to enforce an appeal waiver.'" (emphasis in original) (quoting *United States v. Riggi,* 649 F.3d 143, 150 n.7 (2d Cir. 2011))); *United States v. Haynes*, 412 F.3d 37, 39 (2d Cir. 2005) ("[A]ppeal waivers are applicable to issues arising subsequent to the plea agreement, including issues created by new judicial decisions. We noted that the possibility of changes in the law is simply one of the risks allocated by the parties' agreement.").

      Here, Laubacker agreed to waive the following rights in the plea agreement:

> The defendant understands that Title 18, United States Code, Section 3742 affords a defendant a limited right to appeal the sentence imposed.  The defendant, however, knowingly waives the right to appeal and collaterally attack any component of a sentence imposed by the Court which falls within or is less than the sentencing range for imprisonment, a fine and supervised release set forth in Section III, ¶ 20, above, notwithstanding the manner in which the Court determines the sentence.

Docket Item 41 at 12.   The calculated range under the Guidelines was a term of imprisonment of 168 to 210 months.  *Id.* at 41.  Furthermore, the plea agreement specifically provided:

> The defendant understands that by agreeing not to collaterally attack the sentence, the defendant is waiving the right to challenge the sentence in the event that in the future the defendant becomes aware of previously unknown facts or a change in the law which the defendant believes would justify a decrease in the defendant's sentence.

*Id.*

      As noted above, this Court sentenced Laubacker to a term of incarceration of 180 months on count one and 60 months on count two, to run concurrently.  *See* Docket

Items 82, 89, 97.  This Court thus sentenced Laubacker to a term of incarceration within the range contemplated by the plea agreement.

What is more, during the plea colloquy the Court ensured not only that Laubacker understood that he was giving up his right to appeal or collaterally attack a Guidelines sentence but also that he was giving up any right to appeal or collaterally attack the underlying conviction:

> THE COURT: Do you understand that by entering into this plea agreement and entering a plea of guilty, you are giving up your right to appeal or collaterally attack your conviction?
>
> THE DEFENDANT: I understand.

Docket Item 99 at 52.

Laubacker now argues that his conviction is subject to a number of attacks related to challenges he might have made prior to, or instead of, pleading guilty.  Such arguments typically would be barred by the waiver in his plea agreement and during the plea colloquy.  But there is an added wrinkle: Laubacker also claims that his counsel was ineffective in not raising these challenges.

### C. Ineffective Assistance of Counsel

A defendant who has signed an appeal waiver still may raise an ineffective assistance of counsel claim "challenging 'the constitutionality of the *process* by which he waived [his right to appeal].'"  *Parisi v. United States*, 529 F.3d 134, 138 (2d Cir. 2008) (emphasis and alteration in original) (quoting *United States v. Hernandez,* 242 F.3d 110, 113 (2d Cir. 2001)); *see also United States v. Lloyd*, 901 F.3d 111, 124 (2d Cir. 2018) (explaining that a defendant's "guilty plea [is] invalid and his appeal waiver [is] unenforceable if he prevail[s] on his claim that he received constitutionally ineffective

15

assistance of counsel during his plea proceedings"), *cert. denied*, 140 S. Ct. 55 (2019). That is because a claim "challenging the attorney's *advice* about [the defendant's] bargaining position . . . connect[s] the knowing and voluntary nature of the defendant's plea decision with the attorney's conduct." *Parisi*, 429 F.3d at 139 (emphasis in original).

To prove ineffective assistance of counsel, a defendant must "(1) demonstrate that his counsel's performance 'fell below an objective standard of reasonableness' in light of 'prevailing professional norms'; and (2) 'affirmatively prove prejudice' arising from counsel's allegedly deficient representation." *United States v. Cohen,* 427 F.3d 164, 167 (2d Cir. 2005) (citations omitted) (quoting *Strickland v. Washington,* 466 U.S. 668, 688 (1984)).  To resolve Laubacker's ineffective assistance of counsel claim, this Court therefore must examine whether, in advising Laubacker about his "bargaining position," *Parisi*, 429 F.3d at 139, Laubacker's defense attorney's performance "fell below an objective standard of reasonableness," *Strickland,* 466 U.S. at 688.  "In assessing the attorney's performance, [the Court] must judge his conduct on the basis of the facts of the particular case, 'viewed as of the time of counsel's conduct.'" *Mayo v. Henderson*, 13 F.3d 528, 533 (2d Cir. 1994) (quoting *Strickland,* 466 U.S. at 690).

Laubacker provides no factual information supporting his self-serving assertion that counsel failed to provide him with effective representation, relying instead on a form motion containing only legal citations.  And Laubacker's own statements during the plea colloquy weigh heavily against what he says now.  Laubacker testified explicitly under oath that he and his lawyer discussed the many rights he was waiving by pleading guilty—including his rights to be indicted by a grand jury, to a speedy trial, to defend

against the charges, and to appeal his conviction and sentence. *See* Docket Item 99 at 8-12, 16-17. He also testified explicitly that he understood the nature of the charges, including their elements and the factual proof the government would offer at trial. *See id.* at 21-22, 30, 39, 43. Laubacker further testified that he was satisfied with the representation provided to him by his counsel. *See id.* at 8, 54, 56. Finally, Laubacker testified that he was entering into the plea agreement voluntarily and of his own free will. *See id.* at 18-19, 21-22, 30.

"Solemn declarations in open court carry a strong presumption of verity." *Blackledge v. Allison*, 431 U.S. 63, 74 (1997). Laubacker offers not a single piece of evidence to rebut this presumption. Rather, his form petition contains a laundry list of conclusory assertions that his counsel failed to provide effective representation. These naked assertions are insufficient to overcome his repeated statements, under oath, to the contrary. What is more, Laubacker does not provide any factual support for his assertion that, with a "reasonable" degree of probability, "but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *See Hill v. Lockhart*, 474 U.S. 52, 59 (1985). In the absence of such evidence—that is, that Laubacker would not have pleaded guilty to the two-count superseding information but instead face trial on the nine-count indictment—Laubacker cannot succeed on his claim of ineffective assistance of counsel. *See also United States v. O'Neill*, 118 F.3d 65, 73 (2d Cir. 1997) ("If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, . . . that course should be followed." (quoting *Strickland*, 466 U.S. at 697)).

In short, Laubacker has not shown—or even raised a serious question suggesting—that he did not knowingly, voluntarily, and intelligently plead guilty to enticing a minor to engage in sexual activity and cyberstalking. As such, Laubacker's appeal and collateral attack waiver bars him from challenging his conviction and sentence.

## **CONCLUSION**

For the reasons set forth above, Laubacker's motion to vacate his sentence under 28 U.S.C. § 2255, Docket Item 100, is DENIED. His petition in W.D.N.Y. Docket No. 19-CV-255 is DISMISSED; and the Clerk of Court shall close that case.

The Court hereby certifies under 28 U.S.C. § 1915(a)(3) that any appeal from this judgment would not be taken in good faith and therefore denies leave to appeal as a poor person. *Coppedge v. United States,* 369 U.S. 438 (1962).

Laubacker must file any notice of appeal with the Clerk's Office, United States District Court, Western District of New York, within 30 days of the date of judgment in this action. Requests to proceed on appeal as a poor person must be filed with the United States Court of Appeals for the Second Circuit in accordance with the requirements of Rule 24 of the Federal Rules of Appellate Procedure.

SO ORDERED.

DATED:   May 4, 2020
         Buffalo, New York


                                        */s/ Lawrence J. Vilardo*
                                        LAWRENCE J. VILARDO
                                        UNITED STATES DISTRICT JUDGE